AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Timothy M. Stengel)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

United States of America )
v. )
Joel Tyson ) Case No. 19-1409-M
)
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of March 19 through October 31, 2018 in the county of Berks in the Eastern District of Pennsylvania , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1), (b)(1)(C) (4 counts) | See attached Exhibit A. |
| Title 21, United States Code, Section 841(a)(1), (b)(1)(A) (1 count) | |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

John Arruda, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8·19·19

_____
*Judge's signature*

City and state: Philadelphia, PA    Hon. Timothy R. Rice, United States Magistrate Judge
*Printed name and title*

## EXHIBIT A

*Offense Description*

### Count One

On or about March 19, 2018, in Berks County, in the Eastern District of Pennsylvania, defendant JOEL TYSON knowingly and intentionally distributed approximately 2.69 grams of a mixture and substance containing detectable amounts of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance. In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### Count Two

On or about April 17, 2018, in Berks County, in the Eastern District of Pennsylvania, defendant JOEL TYSON knowingly and intentionally distributed approximately 5.28 grams of a mixture and substance containing detectable amounts of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance. In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### Count Three

On or about July 12, 2018, in Berks County, in the Eastern District of Pennsylvania, defendant JOEL TYSON knowingly and intentionally distributed approximately 3.03 grams of a mixture and substance containing detectable amounts of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, and approximately 28.31 grams of a mixture and substance containing a detectable amount of methamphetamine. In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### Count Four

On or about August 10, 2018, in Berks County, in the Eastern District of Pennsylvania, defendant JOEL TYSON knowingly and intentionally distributed approximately 14.62 grams of a mixture and substance containing detectable amounts of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, and approximately 27.98 grams of a mixture and substance containing a detectable amount of methamphetamine. In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### Count Five

On or about October 31, 2018, in Berks County, in the Eastern District of Pennsylvania, defendant JOEL TYSON knowingly and intentionally possessed with intent to distribute 50 grams or more, that is, approximately 83.3 grams, of methamphetamine hydrochloride. In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

Your affiant, Homeland Security Investigations Special Agent John Arruda, being duly sworn according to law, states:

### AFFIANT'S BACKGROUND

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI") and have been since September 2006. I have participated in investigations of unlawful narcotics smuggling and distribution, and I have conducted or participated in surveillance, undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records. Through training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and the methods of payment for such drugs.

2. My narcotics investigation training includes the techniques used by smugglers to bring narcotics into the United States. During my twelve (12) years in law enforcement, I have become familiar with the investigation and enforcement of state and federal narcotics laws. Based upon this experience, I have become well-versed in the methodology utilized in narcotics trafficking operations, the specific language used by narcotics trafficking operations, and the unique trafficking patterns employed by narcotics organizations. In addition, I am also familiar with the various methods generally utilized by traffickers to transport narcotics through airports, seaports and via common carriers. I have conducted physical surveillance, and electronic surveillance in many types of cases, including significant narcotic cases. I have arrested numerous

individuals for various narcotics violations and have spoken with several narcotics dealers and confidential sources concerning the methods and practices of drug traffickers.

3. As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law to conduct investigations of and make arrests for offenses enumerated in Titles 18, 19, 21, 31 and 46 of the United States Code. I submit this affidavit in support of a criminal complaint, charging JOEL TYSON with distribution of heroin, fentanyl, and methamphetamine, and possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) & (b)(1)(C).

4. The information in this affidavit was provided to me by law enforcement officers that directly participated in this investigation and learned by me through the review of reports and other documents. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, this affidavit does not set forth each and every fact of which I am aware.

## INVESTIGATION DETAILS

5. In 2018, members of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation (BNI) began an investigation into illegal heroin and methamphetamine trafficking in Berks County, Pennsylvania. During the course of the investigation, law enforcement officers utilized investigative techniques, including physical surveillance, use of a confidential informant, consensual recordings, and controlled purchases of heroin and methamphetamine. These investigative measures revealed that JOEL TYSON was distributing heroin, fentanyl, and methamphetamine in Berks County.

2

6. BNI agents used a confidential informant (the CI) during this investigation, with whom they have worked for approximately three years in numerous drug trafficking investigations. The CI has proven reliable, and has provided information that contributed to at least five arrests during that period.

7. In March 2018 the CI told law enforcement agents that an individual known to the CI as "D" – and later identified as JOEL TYSON – was selling heroin in Berks County. The CI told agents that "D" (or TYSON) drives a dark blue four door vehicle, and the CI informed them that "D" used telephone number XXX-XXX-3591. Agents queried the database "Accurint" for telephone number XXX-XXX-3591 and the telephone number came back to JOEL TYSON.

8. Thereafter, BNI agents conducted numerous controlled purchases of narcotics from TYSON. These controlled purchases are described in detail below. A controlled purchase is defined as a purchase made by a confidential informant of a controlled substance under the supervision of law enforcement. Generally, prior to the purchase, the confidential informant is searched for controlled substances, weapons, and/or currency. The confidential informant is then provided with a specific amount of money to make the purchase. Surveillance of the confidential informant is maintained by law enforcement agents as much as reasonably possible during a controlled purchase. After the transaction is completed, the confidential informant turns over the purchased controlled substances to a law enforcement agent. The confidential informant is again searched for controlled substances, weapons, and/or currency. The confidential informant's vehicle, if used, is also searched prior to and after the transaction for

3

controlled substances, weapons, and/or currency. During the controlled purchases described herein, those procedures were followed.

9. On March 19, 2018, agents directed the CI to place a telephone call to TYSON to arrange to purchase heroin. During this call, which was monitored by BNI agents, TYSON agreed to sell the CI five bundles of heroin for $300. I know from my training and experience that a bundle of heroin is typically 10 to 14 small packets, each containing approximately 0.03-0.05 grams of heroin. The packets are often held together by a rubber band, and the bundle is sold as a unit.

10. TYSON and the CI agreed to meet in the parking lot of a shopping center in Berks County. Agents searched the CI and the CI's vehicle for money and contraband and found none. Agents then followed the CI to the parking lot. After the CI arrived in the parking lot, agents observed a blue Buick sedan, bearing Pennsylvania registration KPW-1261, drive into the parking lot and park next to the CI. Agents then observed TYSON exit the Buick and enter the CI's vehicle. A few minutes later, TYSON exited the CI's vehicle, returned to the Buick, and drove out of the parking lot. Agents then met with the CI, at which time the CI provided to them ten baggies of suspected heroin.

11. Agents sent the suspected heroin to the Pennsylvania State Police, Bureau of Forensic Services for analysis. The submitted substance weighed 2.69 grams, plus or minus .02 grams, and contained heroin and fentanyl.

12. On March 20, 2018, agents obtained a Pennsylvania driver's license photograph associated with TYSON and showed it to the CI. The CI confirmed that TYSON was the individual who sold the CI heroin during the controlled purchase the previous day.

13. On April 17, 2018, agents directed the CI to place a telephone call to TYSON to arrange to purchase heroin. The CI was initially unable to make contact with TYSON but the CI eventually reached him. The CI ordered 20 bundles of heroin, and they agreed to meet in the parking lot of a shopping center in Berks County. Agents searched the CI and the CI's vehicle for money and contraband and found none. Agents then followed the CI to the parking lot. After the CI arrived at the parking lot, agents observed TYSON drive a blue Buick, bearing Pennsylvania registration KPH-1261, into the parking lot and park next to the CI. TYSON exited the vehicle and entered the passenger side of the CI's vehicle. A few minutes later, TYSON returned to the Buick and drove away.

14. The CI then contacted agents to explain that TYSON misunderstood how much heroin the CI ordered, and that he brought 20 grams of heroin instead of 20 bundles. The CI told agents that TYSON would return with the correct order. A short time later, TYSON returned in his Buick, got into the CI's vehicle, and then exited the vehicle a short time later. The transaction between the CI and TYSON was audio recorded with the consent of the CI.

15. Agents then met with the CI, and the CI turned over 20 plastic bags of suspected heroin. Agents sent the suspected heroin to the Pennsylvania State Police, Bureau of Forensic Services for analysis. Analysis of the powder in five of the 20 bags, which had a net weight of 1.32 grams, plus or minus .01 grams, confirmed the presence of heroin and fentanyl. The estimated total net weight of the powder in all 20 bags is 5.28 grams.

16. On July 12, 2018, agents directed the CI to send a text message to TYSON and arrange to purchase 10 bundles of heroin and one ounce of methamphetamine from TYSON. TYSON agreed to sell that amount to the CI for $1,000, and the CI and TYSON arranged to meet at a convenience store in Berks County. Agents searched the CI and the CI's vehicle for money and contraband and found none. Agents followed the CI to the meeting location. After the CI arrived at the convenience store, TYSON arrived driving the same blue Buick he drove to the prior controlled purchases. TYSON parked next to the CI. The agents had placed surveillance equipment in the CI's vehicle, but the CI exited his/her vehicle and entered the passenger side of TYSON's Buick, and then exited approximately a minute later. The CI returned to his/her vehicle and then drove to meet agents where he/she turned over to them a bag of suspected methamphetamine and 10 bags of suspected heroin.

17. Agents sent the suspected heroin to the Pennsylvania State Police, Bureau of Forensic Services for analysis. The first submitted item, a crystalline substance, had a net weight 28.31 grams, plus or minus .01 grams, and tested positive for the presence of methamphetamine. Analysis of the powder in six of the 10 bags, which had a net weight of 1.37 grams, plus or minus .02 grams, confirmed the presence of heroin and fentanyl. The estimated total net weight of the powder in all 10 bags is 3.03 grams.

18. On August 10, 2018 agents directed the CI to place a telephone call to TYSON to arrange to purchase heroin and methamphetamine. TYSON and the CI agreed to meet at a convenience store in Berks County. Agents searched the CI and the CI's vehicle for money and contraband and found none. Agents followed the CI to the meeting location. After the CI arrived at the convenience store, agents observed TYSON

6

arrive at the convenience store on a green motorcycle and park next to the CI. Shortly after parking next to the CI, TYSON left on his motorcycle. Agents followed the CI to a second location. Agents then observed TYSON return on his motorcycle and meet with the CI at the passenger side of the CI's vehicle. The CI left the parking lot and met with agents where he/she turned over a quantity of suspected methamphetamine and heroin.

19. The CI explained to agents that when TYSON met the CI at the first location, TYSON gave him/her what he told her was one ounce of methamphetamine and five grams of heroin. The CI told TYSON that he/she wanted an additional five grams of heroin, so TYSON left to get the additional heroin. TYSON instructed the CI to meet him at a second convenience store to purchase the additional heroin.

20. Agents sent the suspected heroin to the Pennsylvania State Police, Bureau of Forensic Services for analysis. The first submitted item, a crystalline substance, weighed 27.98 grams, plus or minus .01 grams, and tested positive for the presence of methamphetamine. The second item, a tan powder, weighed 5.12 grams, plus or minus .01 grams, and contained heroin and fentanyl. The third item, a grey powder, weighed 9.50 grams, plus or minus .01 grams, and contained heroin and fentanyl.

21. On October 3, 2018 agents directed the CI to arrange to purchase one ounce of methamphetamine and ten bundles of heroin from TYSON. The CI exchanged text messages with TYSON, and they agreed to meet in a mall parking lot in Berks County. Agents searched the CI and the CI's vehicle for money and contraband and found none. Agents then followed the CI to the mall parking lot. Agents observed TYSON arrive at the mall parking lot on a green motorcycle and park next to the CI. He then got into the driver's side, rear seat of the CI's vehicle. TYSON returned to his

7

motorcycle a few minutes later and rode away. The CI then met with agents where he/she turned over to them one ounce of suspected methamphetamine and 10 bundles of suspected heroin.

22. Agents sent the suspected methamphetamine and heroin to the Pennsylvania State Police, Bureau of Forensic Services, and results are pending.

23. On October 31, 2018, agents met with the CI to plan a "buy/bust," during which TYSON would be arrested following his delivery of three ounces of methamphetamine and one ounce of heroin. The CI contacted TYSON by text message, and the CI and TYSON agreed to meet in a store parking lot in Reading, Berks County. Agents searched the CI and the CI's vehicle for money and contraband and found none. Agents then followed the CI to the parking lot where he/she parked. A short time later, agents observed TYSON drive into the parking lot in his blue Buick.

24. As TYSON approached the CI's vehicle, agents confronted TYSON, and aerial surveillance observed TYSON throw an object to the ground. The object was recovered and was determined to be a brown bag containing approximately three ounces of suspected methamphetamine, separated into three individual bags, and one ounce of heroin.

25. The quantity of suspected methamphetamine seized from TYSON on October 31, 2018 was sent to the United States Customs and Border Protection (CBP) Savannah Laboratory for analysis. The suspected methamphetamine in each of the three bags tested positive for the presence of methamphetamine hydrochloride. The first bag contained 27.7 grams, plus or minus .01 grams, of methamphetamine hydrochloride. The second bag contained 27.79 grams, plus or minus .01 grams, of methamphetamine

hydrochloride. The third bag contained 27.81 grams, plus or minus .01 grams, of methamphetamine hydrochloride. In total, the methamphetamine hydrochloride weighed approximately 83.3 grams. The material from all three bags was composited together for quantitative analysis, which demonstrated that the methamphetamine hydrochloride had an average purity of 100.5%, plus or minus 2.1%, by weight as received.

26. Agents sent the suspected heroin purchased on October 31, 2018 to the Pennsylvania State Police, Bureau of Forensic Services, and results are pending.

27. I submit that there is probable cause to believe that JOEL TYSON violated federal drug laws by selling heroin, fentanyl, and methamphetamine to the CI and by possessing with the intent to distribute to the CI methamphetamine hydrochloride. Specifically:

   a. the March 19, 2018 sale of approximately 2.69 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, to the CI was in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

   b. the April 17, 2018 sale of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, to the CI was in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

   c. the July 12, 2018 sale of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and a mixture and substance containing a detectable

9

amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, to the CI was in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

d. the August 10, 2018 sale of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, to the CI was in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and

e. the October 31, 2018 possession with intent to distribute 50 grams or more, that is, approximately 83.3 grams, of methamphetamine hydrochloride, a Schedule II controlled substance, to the CI was in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).

Respectfully submitted,

_____
Special Agent John Arruda
Department of Homeland Security

Sworn to and Subscribed Before Me This
19th Day of August 2019

_____
Honorable Timothy R. Rice
United States Magistrate Judge